UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CRIMINAL CASE NO. 16-10-DLB-CJS-1
CIVIL CASE NO. 18-122-DLB-CJS

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                          **REPORT AND RECOMMENDATION**

TRAVIS RAYSHAWN CLARK                                                                   DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Travis Rayshawn Clark, *pro se*, moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 (R. 126) and for leave to amend his § 2255 motion to add new claims (R. 136). The Government has responded (R. 144), and Clark has replied (R. 147). Pursuant to local practice, this matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b). For the reasons below, it will be recommended that Clark's § 2255 motion (R. 126) and his motion to amend (R. 136) **be denied.**

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Clark and other persons were arrested by law enforcement on September 10, 2016, in Cincinnati, Ohio. (R. 56, Page ID 132). One of the items found at the arrest scene was 50 grams of a suspected controlled substance that, after being sent to the law enforcement test lab, was determined to contain 20 grams of carfentanil. (*Id.* at Page ID 132-33). Clark was indicted on three counts relating to conspiring with Matthew Bowman and Rachael Cornett to distribute an analogue of fentanyl, i.e., carfentanil, and for the serious physical injury to one victim, and death of another, that resulted from the use of that drug. (R. 38). Clark entered into a plea agreement

with the Government to plead guilty to a single count—conspiracy to distribute a mixture or substance containing a detectable amount of carfentanil, resulting in death, in violation of 21 U.S.C. §§ 841(a)(l) and 846. (R. 56; 116). Because a person died from using the drug, Clark was subject to an enhanced "term of imprisonment of not less than twenty years or more than life" under § 841(b)(1)(C), i.e., an overdose-death enhancement. On December 19, 2017, Clark was sentenced to 240 months in prison. (R. 116). Clark did not appeal.

Clark timely filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on December 12, 2018.[1] (*See* R. 126, Page ID 405). He alleges that his trial counsel was ineffective because counsel coerced him into signing the plea agreement, failed to defend him against the overdose-death enhancement, and improperly continued to represent him despite the two having "irreconcilable differences." (*Id.* at 408-12). Clark filed a "Motion for Leave to File Amended [§ 2255] Motion" on January 8, 2019.[2] (R. 136). In the tendered amended § 2255 motion, he seeks to add new ineffective-assistance claims, alleging that counsel failed to investigate his case, interview and call witnesses, and file a notice of appeal. (R. 136-1, Page ID 510). The Government argues in its Response that the claims from Clark's § 2255 motion and amended motion fail on the merits. (R. 144). The Government did not offer any argument as to whether Clark should be granted leave to amend his § 2255 motion. (*Id.*).

II. ANALYSIS

Under 28 U.S.C. § 2255(a), a federal prisoner may seek relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked

---

[1] Applying the prison mailbox rule, Clark's motion is deemed filed on December 12, 2018, when Clark delivered it to prison authorities for mailing. *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999).

[2] The prison mailbox rule again applies, assuming that Clark provided his motion to amend to prison authorities for mailing on the date that he signed it, January 8, 2019.

2

jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. To succeed on a § 2255 motion alleging constitutional error, a federal prisoner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional error, a federal prisoner "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). In sum, a federal prisoner must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A federal prisoner must prove his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

All of Clark's claims allege the ineffective assistance of counsel.[3] To successfully assert an ineffective-assistance-of-counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id*. at 688. Judicial scrutiny of counsel's performance, however, is "highly

---

[3] While Clark's plea agreement generally waived his right to collaterally attack his guilty plea, conviction, and sentence, it excepted ineffective-assistance claims. (R. 56, Page ID 135).

deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id*. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id*. at 697. ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

### A. Clark's § 2255 Motion

Clark's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence alleges that his trial counsel was ineffective because counsel coerced him into signing the plea agreement, failed to defend him against the overdose-death enhancement, and improperly continued to represent him despite the two having "irreconcilable differences." (R. 126). As will be explained below, consideration of the record, the briefs, and the applicable law reveals that each of these claims is without merit.

### 1. Clark's claim that counsel coerced him to enter into the plea agreement fails

Clark's first claim argues that trial counsel coerced him to enter into his plea agreement with the United States "by utilizing scare tactics and openly admitting to his client that 'he does not like this case'" and by telling him that a jury would not like the case. (R. 126, Page ID 408-09). Clark interprets his counsel's statements as meaning that the jury, who would likely be predominately white, would not like his case *because he is black*.

> Counsel's advice about the infusion [] of race in a predominately white state invoked visions of a "lynch mob" mentality towards the Petitioner, and inferred that he would not receive a fair trial. By stating his repugnancy towards the case and the Petitioner, he **ALL** but said that []if the Petitioner decided to pursue his constitutional right to trial, that he could **not** depend on counsel's assistance . . . in other words, Petitioner would for all intents and purposes, be "on his own."

(*Id.* at 407, 409; R. 147, Page ID 596).

For his part, trial counsel provided an affidavit stating the he does "not recall saying 'I don't like this case either.'" (R. 144, Page ID 575). He admits that he said, "people don't like your case," but this statement was made in the context of counsel explaining that media reports of overdose deaths, well publicized knowledge that drugs were originating from Ohio and Michigan, and local knowledge of "the pervasive drug problem in northeastern Kentucky," meant "that there would be no sympathy for him because he was a drug dealer, not because he was black." (*Id.*). Clark replies that, while counsel's statements might fairly be considered advice as to the "climate" he would face if he went to trial, "it's also proper to assume that contrary to his Affidavit, Defense Counsel really did NOT like defending [a]n out of town, black drug dealer." (R. 147, Page ID 596).

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). Putting aside, for

now, the question of whether counsel's statements could even be considered coercive, a threshold basis to deny the claim is found in the record. Clark's own sworn statement at his plea colloquy before the presiding District Judge demonstrates that his plea was not coerced by counsel but rather was voluntary. *See Underwood v. United States*, No. 18-5793, 2018 WL 7140598, at *2 (6th Cir. Nov. 19, 2018) ("In a collateral attack on a conviction, a transcript of proceedings is generally sufficient to demonstrate that the defendant's conduct was voluntary and knowing.").

Specifically, the presiding District Judge asked Clark, "Has anyone forced you into entering this guilty plea?" (R. 133, Page ID 444). Clark answered, "No, Your Honor." (*Id.*). If Clark sincerely believed that counsel's statements about counsel and a jury not liking the case were effectively a guarantee of a racially-biased trial, Clark would have been expected to say so. *Cf. Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("We note additionally that once it became clear at the sentencing hearing that the government did not intend to stand mute, it would have been reasonable for defendant, who was present and represented by counsel, to object if the agreement did indeed consist in part of this promise."). But Clark did not. And his "[s]olemn declaration[] in open court [that no one forced his guilty plea] carr[ies] a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "In light of [Clark's] plea colloquy, his bare claim that his counsel coerced him into pleading guilty is insufficient to overcome the presumption of truthfulness which attaches to statements made during the plea colloquy." *Tucker v. Berghuis*, No. 1:15-CV-764, 2017 WL 2451574, at *4 (W.D. Mich. May 17, 2017), *report and recommendation adopted,* 2017 WL 2438644 (W.D. Mich. June 6, 2017); *see Haynes v. Burt*, No. 16-2343, 2017 WL 4404627, at *3 (6th Cir. Mar. 23, 2017) (denying application for certificate appealability on ineffective-assistance claim where habeas petitioner's "own sworn statements contradict his assertion that his counsel pressured him to plead guilty").

Returning to counsel's statements, they cannot be considered impermissibly coercive. Clark's *subjective* impression and his inference that counsel's statements were guarantees of a racially-biased trial cannot be used to determine the voluntariness of his plea. *See Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) ("If we were to rely on Ramos's alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy. . . ."). Rather, viewed objectively, counsel's statements about counsel and a jury not liking Clark's case do not reasonably invoke a "lynch mob mentality," nor do they make it "proper to assume" that counsel would abandon Clark's defense because he was an "out of town, black drug dealer." Instead, counsel's explanation—that the jury would view Clark negatively because he was a drug dealer and because of local awareness of a pervasive drug problem—is fitting given the context of the case and reason.[4]  Accordingly, this claim fails.[5]

   **2.   Clark's claim that counsel was ineffective in defending the overdose-death enhancement fails**

---

[4] Clark's claim appears to attack only the racial implications of counsel's alleged advice about how a jury would view the case, i.e., that a jury would not like his case because he is *black*.  Clark's claim does not appear to attack counsel's advice on whether a jury would view him more negatively because at the time of the charged conduct he was a *drug dealer*.  But if Clark's argument stretches so far, it is not ineffective assistance for counsel to advise a client about how a jury might reasonably react to his case. *See Hodges v. Colson*, 727 F.3d 517, 533 (6th Cir. 2013) (declining, on habeas review, to disturb state court decision, concluding that counsel was not ineffective for "reasonable belief that the jury would view the [defendant's] guilty plea as an expression of remorse" for purposes of sentencing).

[5] Within his first claim, Clark also briefly alleges that counsel coerced his plea by "invok[ing] the threat that Petitioner was responsible for the death of a drug user." (R. 126, Page ID 409).  This claim appears to be based on Clark's mistaken belief that counsel incorrectly advised him that he was subject to an overdose-death enhancement. (*Id.* at Page ID 409-10).  But as discussed *infra*, Clark's attack on his overdose enhancement fails.  Accordingly, counsel's advice that the enhancement applied (which Clark improperly characterizes as a "threat") was accurate and thus counsel cannot be said to have been ineffective.

Clark's second claim argues that trial counsel should have invoked *Burrage v. United States*, 571 U.S. 204 (2014), to defend him against the overdose-death enhancement. (R. 126, Page ID 410). In *Burrage*, the Supreme Court addressed § 841, holding that, "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision . . . unless such use is a but-for cause of the death or injury." 571 U.S. 204, 218-19. Clark argues that he is not the but-for cause of the victim's death because he did not distribute the drugs that killed the victim. (R. 126, Page ID 410).

Analytically, *Burrage* is a poor fit for this claim. This is because *Burrage*'s "but-for cause" discussion centered on whether a drug is "the straw that broke the camel's back" to cause death or injury. *Id.* at 211. Clark does not dispute that the drug involved here (carfentanil) killed the victim. He simply argues that he did not sell the drug that killed her. Specifically, he states that he sold heroin but asserts that there is no evidence that he sold carfentanil. (*See* R. 126, Page ID 410-11). Accordingly, the Court construes this claim as arguing that counsel was ineffective for failing to adequately argue that he did not sell the carfentanil that killed the victim.

This claim also fails. As Clark concedes, law enforcement found him in the driver's seat of a car containing carfentanil. (*Id.* at Page ID 411). Although Clark now says the carfentanil was not his but belonged to a passenger, this assertion is entitled to no credibility.[6] This is because Clark agreed in his plea agreement (R. 56, Page ID 131-32) and at his plea hearing (R. 133, Page ID 470) that he was part of the distribution chain of the carfentanil that killed the overdose victim.

---

[6] Clark also asserts that no heroin was found in the victim's system despite the victim's roommate stating that the victim often used heroin three or four times a week. This argument is confusing and it is not clear what Clark hopes to prove. Perhaps he hopes to undermine the reliability of the toxicology report by implying that if heroin was not detected, the report must have been wrong. And if the report was wrong about that, it cannot be trusted as evidence against him. Whatever argument Clark hopes to make though is waived by his failure to adequately present and develop it.

*Webster v. Streeval*, No. 0:19-cv-111-HRW, 2019 WL 5848060, at *3 (E.D. Ky. Nov. 7, 2019) ("As a preliminary matter, the government was not required to prove anything because Webster admitted all of the facts essential to sustain his conviction when he agreed to plead guilty."). Accordingly, Clark's "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

### 3. Clark's claim that counsel was ineffective for continuing to represent him despite the two having "irreconcilable differences" fails

Clark's third claim argues that his and trial counsel's unspecified "irreconcilable differences" created a conflict of interest. However, he makes no specific argument beyond citing *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018). (R. 126, Page ID 411-12). In *McCoy*, the Supreme Court held that it was a structural error for counsel to admit his client's guilt to a jury, even if such admission was sound trial strategy, if the client made it clear to counsel that the client wanted to maintain his innocence. 138 S. Ct. 1510 ("[W]e agree with the majority of state courts of last resort that counsel may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission.").

But Clark fails to explain how *McCoy* applies here, and this Court sees no relation to this case, as *McCoy* dealt with admitting a client's guilt, over his objections, at trial. Here, Clark *agreed* to plead guilty. Without specific factual development or applicable legal argument to show that his counsel had an actual conflict of interest, Clark is left with an empty shell of an ineffective-assistance claim, which this Court cannot fill with its own speculation or argument on Clark's behalf. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012) ("Yet, Wogenstahl's arguments remain conclusory and perfunctory, and we conclude that Wogenstahl's general claims

9

of [ineffective assistance of trial counsel] are insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief.").

### B. Clark's Motion to Amend

Clark also moves for leave to file an amended § 2255 motion to add additional ineffective-assistance claims. (R. 136). The Federal Rules of Civil Procedure apply to § 2255 motions "to the extent that they are not inconsistent with any statutory provisions or [the Federal Rules Governing § 2255 Proceedings]. Rule 12 of the Federal Rules Governing Section 2255 Proceedings. "A motion to amend a § 2255 motion is governed by Federal Rule of Civil Procedure 15(a)." *United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016); (*see* R. 136 (citing Rule 15)). And Clark's "Rule 15(a) motion for leave to amend [his § 2255 motion] . . . is the appropriate mechanism through which [he] may assert additional claims for relief." *Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007).

However, "a Rule 15 motion will be denied where it is filed after [the statute of limitations] period expires unless the proposed amendment relates back to the date of the original pleading." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008). Under § 2255(f), a one-year limitations period runs from the latest of four occurrences. The only implicated occurrence here is "the date on which the judgment of conviction becomes final." § 2255(f)(1). "[W]hen a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed." *Sanchez-Castellano v. United States*, 358 F.3d 424, 427 (6th Cir. 2004). Here, as "[i]n most cases, that period is [fourteen] days, pursuant to [Federal Rule of Appellate Procedure] 4(b)(1)." *Id.* Clark's conviction thus became final on January 2, 2018— fourteen days after the December 19, 2017 judgment. His one-year limitations period thus expired

10

on January 2, 2019, meaning that his January 8, 2019 motion to amend is untimely. Accordingly, the question now becomes, do his "proposed amendment[s] relate[] back to the date of the original pleading[?]" *Howard*, 533 F.3d at 475.

Amendments relate back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has interpreted this language to require "original and amended petitions [to] state claims that are tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). Notably, it has flatly rejected prior circuit courts' interpretation that permitted relation back "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence." *Id.* at 656. "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, [the Antiterrorism and Effective Death Penalty Act of 1996's (AEDPA)] limitation period would have slim significance." *Id.* at 662.

Clark's new ineffective-assistance claims do not relate back. These claims argue that trial counsel was ineffective for failing to investigate his case, interview and call witnesses, and file a notice of appeal. The common core of operative facts for these claims is far different than the ineffective-assistance claims raised in his initial § 2255 motion—that counsel was ineffective for coercing him into signing the plea agreement, failing to properly defend him against the overdose-death enhancement, and continuing to represent him despite the two having "irreconcilable differences." Notably, just because the amended § 2255 motion lists the same type of legal claim asserted in the initial § 2255 motion—ineffective assistance of counsel—Clark is not entitled to amend his § 2255 motion because the key consideration is not the legal bases for the claims but whether they share a common core of operative facts. *James v. United States*, No. 2:15-CR-25, 2019 WL 4122189, at *4 (E.D. Tenn. Aug. 29, 2019) ("True, the motion to vacate asserted claims

11

of ineffective assistance of counsel. Nonetheless, the attorney misstep now alleged is not similar in type to the asserted attorney shortcomings presented in that pleading."). Therefore, it will be recommended that Clark's motion to amend his § 2255 motion be denied.[7]

### C. Clark's Proposed New Claims

In the alternative, if Clark is given leave to amend his § 2255 motion, his new ineffective-assistance claims set forth in the tendered amended § 2255 motion (R. 136-1) do not afford him relief. In reviewing these claims, the Court is again guided by the Supreme Court's instruction in *Strickland*. 466 U.S. 668.

#### 1. Clark's claim that counsel was ineffective for failing to adequately investigate and uncover evidence disproving the overdose-death enhancement fails

Clark's first proposed new claim argues that trial counsel should have investigated and uncovered evidence showing that he was not responsible for causing the victim's overdose death. (R. 136-1, Page ID 511). But, as will be explained, this claim is premised on legal misunderstandings.

When Clark pled guilty, he admitted in his plea agreement that the Government could prove he obtained drugs from sources in Cincinnati, he distributed those drugs to Bowman, Bowman distributed those drugs to a cooperating individual, the cooperating individual distributed the drugs to the victim, the victim used the drugs, the victim died as a result of using the drugs, and the drugs

---

[7] Should Clark later argue that the Government's silence concerning the timeliness of his proposed new claims prevents this Court from finding them time-barred, he would be wrong. In *Day v. McDonough*, 547 U.S. 198, 209-10 (2006), the Supreme Court held that "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition" as long as the court "accord[s] the parties fair notice and an opportunity to present their positions." *Day* extends to § 2255 cases and thus applies here. *Shelton v. United States*, 800 F.3d 292, 294 (6th Cir. 2015). Moreover, this Report and Recommendation provides notice to Clark that his proposed additional claims are time-barred. The period for filing objections (specified at the end of this Report and Recommendation) gives Clark the opportunity to present his position on the issue.

were later identified as carfentanil.  (R. 56, Page ID 131-32).  Notably, Clark's motion to amend essentially repeats these facts as true.  (*See* R. 136-1, Page ID 511-12).  However, he disputes their legal significance.

In Clark's motion to amend, he argues that his overdose-death enhancement is unwarranted because it was Bowman who *directly* sold the drugs to the victim, not Clark.  "Movant had NO control [over] [Bowman's] distribution . . .  In fact, Movant merely playing a(n) essential role in a drug offense, is NO equivalent to exercising control over any participants 'drug habits' or whom distributes a substance to another person, resulting in death."  (R. 136-1, Page ID 513).  But Clark did not need to directly distribute the drugs to the victim for the overdose-death enhancement to apply.  The Sixth Circuit has held that "[t]o be liable for the § 841(b)(1)(C) enhancement after having been convicted on a conspiracy theory, the defendant need only have been part of the distribution chain of the drug at some point and need not have distributed the drug directly to the victim."  *United States v. Hamm*, 952 F.3d 728, 738 (6th Cir. 2020), *cert. denied*, Case No. 19-7986 (Apr. 20, 2020).  Here, Clark was admittedly part of the distribution chain—he received the drugs from the Cincinnati source, he distributed them to Bowman, Bowman distributed them to a cooperating individual, who distributed them to the overdose victim.[8]

On this point, Clark appears to argue that counsel was ineffective for not investigating and uncovering evidence showing that he was not part of the distribution chain.  He contends that "the prosecution presents **no** evidence" showing that he or Bowman suffered ill effects from using the same drugs that killed the overdose victim and that "perchance [Bowman] had other resources of

---

[8] At Clark's rearraignment, the presiding District Judge asked:  "So you were part of the chain of distribution . . .?"  (R. 133, Page ID 470).  Clark answered, "Yes, Your Honor."  (*Id.*).

13

heroin suppliers."[9] (R. 136, Page ID 512). And he poses several hypothetical questions that he asserts counsel should have answered. Did Bowman "cut the drug[s] with anything?" (*Id.*). How did drugs users consume the drugs? (*Id.*). And how many people overdosed from the drugs? (*Id.*). He argues that if counsel would have "subjected [his case] to adversarial testing" there is "a reasonable probability . . . that [he] would not have entered into a plea of guilty." (R. 136-1, Page ID 513).

But Clark misunderstands § 2255 review. First, it is not the Government's burden to present evidence disproving his ineffective-assistance claim; it is Clark's burden to prove it. *Pough*, 442 F.3d at 964 ("Pough must prove his allegation that his lawyers were constitutionally ineffective by a preponderance of the evidence."). Second, to prove that his counsel was ineffective, he must show some misstep from his counsel and prejudice to him due to that misstep, which in this context requires him to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[10] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). But neither can be shown by Clark posing a series of questions. Rather, he has failed to do what is required—point to evidence that counsel should have uncovered and explain how counsel's failure to uncover it was ineffective and prejudicial. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) ("This Court has held that a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have

---

[9] Presumably, Clark hoped to show that Bowman obtained the controlled substance from some source other than Clark.

[10] The Court applies *Hill* because its formulation of prejudice is the type that Clark argues in this claim. (R. 136-1, Page ID 513). "*Hill* was correctly decided and applies in the context in which it arose. *Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." *Missouri v. Frye*, 566 U.S. 134, 148 (2012).

been material."); *see Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) (denying § 2255 relief where defendant "tacked [ineffective-assistance claims] on to a list of . . . failed ineffective assistance of counsel arguments" and did "not articulate how [counsel's] actions specifically were deficient or how they specifically prejudiced the outcome of the case"). Accordingly, this claim fails.

### 2. Clark's claim that counsel was ineffective for failing to interview and call witnesses fails

Clark's second proposed new claim argues that trial counsel failed to interview Bowman, other drug users who bought the same drug as the victim, and the cooperating individual who sold the drugs to the victim. (R. 136-1, Page ID 514). But, as before, Clark's formulation of his ineffective-assistance claim is wholly speculative: "[C]ounsel *may* have been able to recover other valuable information for which to cast doubt from the said information that the Government attained from these witnesses ('drug addicts[']).". (emphasis added). But Clark is not entitled to § 2255 relief based on unspecified information counsel *may* have uncovered if he had interviewed witnesses and called them to testify. *Nazzal v. United States*, No. CR 10-20392, 2019 WL 4735485, at *9 (E.D. Mich. Sept. 26, 2019) ("Because the petitioner has not identified the substance of the testimony that would have been given by the various persons he identified as potential witnesses, he has not advanced any sufficiently grounded claim that his trial counsel was ineffective by failing to locate, interview, or call them to testify.").

Also within this claim, Clark briefly alleges that counsel was ineffective for stipulating to the admission of an autopsy report of the overdose victim, which he argues precluded him from reviewing "the medical examiner[']s report, toxi[]cology report or evidence of the victim[']s drug use." (R. 136-1, Page ID 515). He appears to argue that this prohibited him from challenging the victim's cause of death or the drugs found in the victim's bloodstream, arguing that "the medical

15

examiner's report *perchance* may have produced different facts than that of the 'autopsy report.'" (R. 136-1, Page ID 515) (emphasis added). However, the conceivability of a different result had counsel not stipulated to the entry of the autopsy report is insufficient to grant § 2255 relief. *Strickland*, 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test. . . .").

>    3.   **Clark's claim that counsel was ineffective for failing to file a notice of appeal fails**

Clark's third proposed new claim argues that trial counsel failed to file a notice of appeal. (R. 136-1, Page ID 515). He alleges no specific factual circumstances about counsel's failure; instead, his allegation is essentially a recitation of the legal showing required by *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). (*See* R. 136-1, Page ID 515-16 ("In essence, the existence of appeal waiver, does not **excuse** defense counsel from filing a Notice of Appeal, when explicitly directed to do so.")). In *Flores-Ortega*, the Supreme Court held that an attorney performs deficiently if, after consulting with his client, he "disregards specific instructions" from his client "to file a notice of appeal[.]" *Flores-Ortega*, 528 U.S. at 477. An attorney's performance is not *per se* deficient simply because he does not consult with his client about the benefits and drawbacks of an appeal. *Id.* at 479. Rather, an attorney must consult with his client regarding an appeal when either (1) "a rational defendant would want to appeal," or (2) the defendant "reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.

Under the circumstances here, there is nothing to indicate a rational defendant would have chosen to file a direct appeal. As part of the plea agreement, Clark expressly agreed to waive his right to appeal the guilty plea, conviction, and sentence (unless his sentence exceeded the advisory sentencing guidelines range). (R. 56, Page ID 134-35). Clark also agreed in the plea agreement

16

that the Government could prove the facts necessary for the overdose-death enhancement. (*Id.* at Page ID 131-32). Second, Clark asserts no facts showing that he *explicitly* instructed counsel to file an appeal on his behalf,[11] nor has he pointed to anything in the record indicating that he *reasonably* demonstrated to counsel that he was interested in appealing. Accordingly, his claim fails.

### D. Evidentiary Hearing

Clark requests an evidentiary hearing on his claims. (R. 126, Page ID 414; R. 147, Page ID 595). However, an evidentiary hearing is not necessary because there are no genuine issues of material fact in dispute and the record conclusively shows that a Clark is not entitled to any relief under 28 U.S.C. § 2255. *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) ("[T]he court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). Accordingly, Clark is not entitled to an evidentiary hearing on his claims.

### III. CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue only if a defendant "has made a substantial showing of the

---

[11] Citing *Garza v. Idaho*, 139 S. Ct. 738 (2019), Clark appears to argue that an attorney must file an appeal even if his client does not clearly express his desire to appeal. (R. 147, Page ID 598). But *Garza* says no such thing. Rather, it reiterated the standard from *Flores-Ortega*: "Where, as here, a defendant has *expressly* requested an appeal, counsel performs deficiently by disregarding the defendant's instructions." *Garza*, 139 S. Ct. at 746 (emphasis added). Here, Clark states that he indicated that he wanted "to discuss his appellate options" with counsel but does not allege facts showing that he *explicitly* directed counsel to file an appeal. (R. 147, Page ID 598). *United States v. Abdulkader*, No. 1:16-CR-019, 2019 WL 6351257, at *3 (S.D. Ohio Nov. 27, 2019) ("But expressing a desire to appeal is distinguishable from an explicit instruction to file an appeal, and this distinction is relevant.").

17

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255). Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists would not debate the denial of Clark's § 2255 motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, it also will be recommended that a certificate of appealability be denied upon the District Judge's entry of a final order in this matter.

### IV.  CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, **IT IS RECOMMENDED** that:

1)  Clark's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 126), including his request for an evidentiary hearing, **be denied;**

2)  Clark's Motion for Leave to File Amended § 2255 Motion (R. 136) **be denied** or, in the alternative, if Clark's Motion for Leave to File Amended § 2255 Motion (R. 136) is granted, that his Amended § 2255 Motion (R. 136-1) **be denied;**

3) a Certificate of Appealability **be denied** in conjunction with the District Judge's entry of a final order in this matter;

4) Judgment in favor of the United States **be entered** contemporaneously with the entry of a final order; and,

5) Clark's collateral proceeding **be dismissed and stricken** from the active docket.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 31st day of August, 2020.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\habeas petitions\2255 IAC\16-10-DLB Clark R&R final.docx